UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA MARIE MARINOBLE, | No.  2:24-cv-2775 AC |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that follow, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on May 18, 2019.  Administrative

---

[1]  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

Record ("AR") 175-80.[2]  Plaintiff alleged the disability onset was the date of her birth, in 1993.  AR 175.  The applications were disapproved initially and on reconsideration.  AR 50, 60-65.  December 4, 2020, ALJ Plauche Villere, Jr. presided over hearings on plaintiff's challenge to the disapprovals.  AR 28-40 (transcript).  Plaintiff was present and testified at the hearing.  AR 28.  She was represented by attorney Jeffrey Milam.  Id.  On February 24, 2021, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 12-23.  On December 15, 2021, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-3 (decision).

On February 1, 2022, plaintiff filed a Complaint in the United States District Court seeking judicial review of the Commissioner's final decision.  AR 472-474.  On January 24, 2023, the District Court adopted the Report and Recommendations of Magistrate Judge Carolyn Delaney and found that the ALJ materially erred because he failed to evaluate the September 2019 mental disorder questionnaire completed by plaintiff's treating psychiatrist, Smita Reddy, M.D.  AR 466-467, 481-489.  The court ordered remand of plaintiff's case for further administrative proceedings and a new decision.  AR 466-467.

Following the remand, ALJ Villere held a new hearing on August 9, 2024.  AR 443-465.  Plaintiff was again represented by attorney Jefrey Milam, and Medical Expert Dr. Lace and Vocational Expert Ms. Whitlow also testified.  Id.  The ALJ issued a new unfavorable decision on August 29, 2024, again finding that plaintiff was not disabled.  AR 416-437.

Plaintiff filed this action on October 9, 2024.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF No. 9.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 11 (plaintiff's summary judgment motion), 12 (Commissioner's summary judgment motion), 13 (plaintiff's response).

////

---

[2]  The AR is electronically filed at ECF No. 10.

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1993 and accordingly was 26 years old when she filed her application for disability benefits.  AR 31, 436.  Plaintiff has at least a high school education with primarily special education classes.  AR 32.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

3

ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

IV.  RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a.  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not

4

disabled.  If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since May 16, 2019, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Step 2] The claimant has the following severe impairments: bipolar disorder; depressive disorder; borderline intellectual functioning (BIF); borderline personality disorder; generalized anxiety disorder; and substance abuse disorder (20 CFR 416.920(c)).
>
> 3. [Step 3] 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple repetitive routine tasks involving no teamwork or quotas or pace; no public interaction; and only superficial interaction with coworkers and supervisors.
>
> 5. [Step 4] The claimant has no past relevant work (20 CFR 416.965).
>
> 6. [Step 5] The claimant was born [in 1993] and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

5

7. [Step 5, continued] The claimant has at least a high school education (20 CFR 416.964).

8. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 16, 2019, the date the application was filed (20 CFR 416.920(g)).

AR 421-37.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 437.

VI.  ANALYSIS

Plaintiff alleges the ALJ erred by (1) failing to properly evaluate the treating medical source opinion of plaintiff's psychiatrist, Smita Reddy, M.D; (2) failing to provide a well-supported explanation for his departure from the examining medical source opinion of the consulting psychologist, Sara Borrowman, Ph.D.; (3) failing to provide specific, clear, and convincing reasons for discounting plaintiff's allegations of mental dysfunction; (4) failing to provide germane reasons for discounting the third-party report of plaintiff's mother, Rita Marinoble; and (5) formulating an RFC that is impermissibly vague.  ECF No. 11 at 11-12.

A.   The ALJ Properly Assessed the Opinions of Dr. Reddy and Dr. Borrowman

Plaintiff challenges the ALJ's treatment of two physicians: her treating psychiatrist, Dr. Reddy, and her consulting psychologist, Dr. Borrowman.  ECF No. 11 at 11.

1. The Medical Opinion Evidence

The ALJ evaluated the medical statement of Dr. Smita Reddy, who started seeing plaintiff in December of 2018, as part of the RFC analysis.  AR 429.  The ALJ noted that Dr. Reddy authored a mental disorder questionnaire form in September of 2019.  Id., AR 334-336.  The report states that plaintiff had a normal gait and posture but slouched in her chair, and while her appearance was generally acceptable, she was dressed inappropriately for a clinical appointment

6

in too-small shorts, in which she seemed uncomfortable.  AR 334.  Dr. Reddy reported that plaintiff complained of difficulty interacting with others, losing her temper, and a lack of desire to do things, but she also noted that medication has improved plaintiff's irritability and motivation. Id.  Dr. Reddy recorded plaintiff's history of treatment as consisting of medication management. Id.[3]  Plaintiff reported her mood was "fine" and Dr. Reddy noted a flat affect.  AR 335.  Plaintiff complained of mood swings, stating she feels angry very easily.  Id.  When asked to describe plaintiff's level of functioning, Dr. Reddy wrote, "Inability to obtain and maintain employment, cannot cook or prepare food, limited housekeep, minimal grooming, fair hygiene, inappropriate dressing."  Id.  Dr. Reddy reported plaintiff was taking 10mg of Lexapro and 2mg of Abilify daily.  AR 336.

The ALJ found Dr. Reddy's opinion unpersuasive because it was inconsistent with her own treatment notes in which plaintiff admitted that her mood had leveled out in April 2019, and described her anxiety and irritability as being well controlled in June and July 2019.  AR 433, 334-336.  In addition, in the ALJ noted that in treatment notes from November 2019, Dr. Reddy stated that the claimant was less engaging after stopping Abilify, which suggests this medication had been helpful.  AR 433, 399.  Further, the ALJ found Dr. Reddy's opinion inconsistent with plaintiff's reported activities of daily living, which include walking and feeding her dogs, hanging out with friends, performing household chores, occasionally cooking, doing little jobs such as housecleaning or yard work for people, taking out the trash, doing laundry, cleaning the dishes, talking on the telephone, spending time online, going out to eat with her friends, occasionally going to the park, going to the grocery store, and taking care of her friend's two small children. AR 433, 35, 330.  Finally, the ALJ found Dr. Reddy's opinion on disability was not well supported by an explanation, and even if it had been, the assertion that an individual cannot obtain and maintain employment is a determination reserved to the Commissioner.  AR 433.

The ALJ also reviewed the opinion of consultative examiner Sara Bowerman, Ph.D..  AR 432.  Dr. Bowerman observed that the plaintiff performed in the borderline range of intellectual

---

[3]  A further notation is illegible.  Id.

functioning, with the possibility of mild intellectual development disorder due to deficits in adaptive functioning. AR 369-83. She found plaintiff capable of remembering and carrying out simple tasks, but that plaintiff's ability to remember and carry out complex tasks is mildly impaired. AR 382-83. Dr. Bowerman concluded that plaintiff may experience periods of marked emotional, cognitive, or behavioral dysfunction that would likely negatively impact interpersonal relationships and work, and diagnosed plaintiff with borderline intellectual functioning, personality disorder, and methamphetamine abuse disorder, mild in early remission. AR 383, 432.

The ALJ found Dr. Bowerman's opinion to be "the most persuasive" medical opinion because it was consistent with plaintiff's improvement with medication, modest abnormalities on mental status examinations, and her self-described range of activities. AR 432. However, the ALJ concluded that Dr. Bowerman's reference to occasionally marked social limitations was vague and lacked specificity, thereby discounting that portion of the opinion. AR 432. In reviewing Dr. Bowerman's assessment, the ALJ concluded that in light of plaintiff's "frequently poor hygiene, questionable insight and poor eye contact as well as her occasionally irritable mood" plaintiff was "capable of no public interaction as well as only superficial interaction with coworkers and supervisors." Id.

The ALJ went on to review the opinion of independent medical expert Michael Lace, PsyD, who testified at plaintiff's second hearing following his review of the medical evidence. AR 434, 445-51. Dr. Lace noted that all opinion evidence is over five years old and, outside of the hospital discharge note from November 2023, there has been no recent treatment that was ongoing or intensive. AR 445-51. He testified that the claimant did not have a severe impairment and that all the "B criteria" limitations would be mild. Dr. Lace opined the only functional limitation would be the need for a work setting where there was a minimal possibility of contact with illegal substances. AR 445-46. The ALJ found the opinion of Dr. Lace unpersuasive, as "inconsistent with the treatment record that demonstrated the need for prescription medications to manage her mental health, the mental status examination that frequently showed poor hygiene, questionable insight and poor eye contact as well as occasionally revealed an irritable mood, the

8

intelligence testing scores in the low average to borderline range, her inability to perform serial 7s and spell the word "world" in reverse, recall ability of six digits forward and three in reverse as well as her documented interpersonal struggles." AR 434.

Finally, the ALJ evaluated the opinions of DDS reviewing psychologists Dr. Klein and Dr. Becker, and consultative psychological examiner Silvia Torrez, PsyD, each of whom found plaintiff unimpaired. AR 532-33. The ALJ found these opinions unpersuasive based on plaintiff's borderline intellectual functioning and need for psychiatric prescription medication, which the ALJ concluded suggested the existence of a severe impairment. AR 21, 47-49, 56-67, 433.

### 2. Standards for ALJ's Evaluation of Medical Opinion Evidence

In evaluating medical opinion evidence, ALJs give no specific evidentiary weight to any particular type of opinion or source but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are defined in the regulations as follows:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

////

9

> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2).

The Ninth Circuit has confirmed that the new regulatory framework adopted in 2017 eliminates the old "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022).  Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. Id.  In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." Id. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

### 3. The ALJ Did Not Err in Evaluating the Medical Opinions

#### A. The ALJ's Assessment of Dr. Reddy's Opinion is Supported

Plaintiff argues that the ALJ erred in addressing the supportability factor of Dr. Reddy's opinion by selectively identifying notations indicating symptom control and stability, while disregarding significant evidence to the contrary, in Dr. Reddy's treatment notes and mental impairment questionnaire.  ECF No. 11 at 14.  With respect to the consistency factor, plaintiff argues that the ALJ erred by exclusively considering plaintiff's daily activities, where the consistency factor requires an ALJ to evaluate the consistency between a medical opinion and the evidence from other medical and nonmedical sources. Id. at 15.

The court does not find error in the ALJ's assessment of Dr. Reddy's opinion.  As to supportability, the ALJ reasonably found that Dr. Reddy's report was not supported by her own treatment notes or explanations, and a review of the opinion itself confirms the ALJ's observation of internal inconsistency.  AR 433.  As the ALJ noted, Dr. Reddy stated that plaintiff had mood swings and was easily angered, but her other treatment records indicated that plaintiff's mood had

10

"leveled out" and that her anxiety and irritability were well controlled with medication, and that plaintiff was "doing ok" enough to care for her friend's children and sustain herself financially. AR 335, 346, 355, 358, 386. Furthermore, a direct reading of Dr. Reddy's report supports the ALJ's finding that the notations within the report, which indicate that plaintiff has been seen monthly for medication management and experiences mood swings and a short temper, do not align with Dr. Reddy's extreme conclusion that plaintiff is incapable of work (which, as the ALJ accurately noted, is a determination reserved to the Commissioner). AR 335-36. Plaintiff's contention that Dr. Reddy's opinion on disability is supported by noted observations such as plaintiff's inappropriate dress, report of difficulty interacting with others, flat affect, psychomotor slowing and mood swings offers another interpretation of the record but does not undermine the ALJ's conclusion. ECF No. 11 at 15.

As to the consistency factor, the ALJ reasonably concluded that Dr. Reddy's opinion was inconsistent with plaintiff's activities. AR 433. The court finds this assessment accurate. For example, Dr. Reddy's report stated that plaintiff could not prepare food or obtain employment, but plaintiff has reported that she is able to cook food for herself, and that she does housework for a friend in exchange for money. AR 330, 376. Plaintiff also reported that she cares for her dogs, does household chores including laundry and dishes, and go to the grocery store. AR 330. Further, though Dr. Reddy suggested that plaintiff had disabling mood swings and anger issues that prevent social interaction, plaintiff reported significant social activities including time with a friend daily, going out to eat with friends, watching her friend's two small children, spending time on the phone. AR 330, 386. The ALJ reasonably found that plaintiff's activities undermined Dr. Reddy's assessed limitations. AR 433.

The ALJ also reasonably concluded that plaintiff's reports of improvement with medication were inconsistent with Dr. Reddy's determination. AR 433; 20 C.F.R. § 416.920c(c)(2). For example, plaintiff reported that her mood "leveled out" and that her anxiety and irritability were well controlled with medication. AR 346, 355, 358. She also told Dr. Reddy that she felt more irritable after discontinuing the medication Abilify and asked to go back on it.

////

11

AR 399. The ALJ reasonably found that this improvement with medication contradicted Dr. Reddy's opinion.

Because the ALJ's assessment of Dr. Reddy's medical statement was supported by substantial evidence, his conclusion may not be disturbed by the court. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (the presence of other opinions provides a basis for rejecting any one of them). To the extent there exists some contrary evidence, it does not undermine the substantiality of the evidence on which the ALJ relied. The court finds no error.

b. The ALJ Adequately Incorporated Dr. Bowerman's Limitations into the RFC

Plaintiff argues the ALJ erred by finding Dr. Bowerman's opinion was well-supported and the "most persuasive," yet formulating an RFC that failed to adequately accommodate the mental limitations identified in Dr. Bowerman's report. ECF No. 11 at 19. For example, plaintiff points to a discrepancy between Dr. Bowerman's opinion and the ALJ's limitations on remembering, applying information, concentrating, persisting and maintaining pace. ECF No. 11 at 19. While the ALJ found that plaintiff had no more than moderate limitations in understanding, remembering, applying information, concentrating, persisting, and maintaining pace (AR 423-425) and restricted plaintiff to simple, repetitive, routine tasks with no quotas or pace (AR 426), Dr. Bowerman found that plaintiff had *up to* a marked impairment in her memory, and *up to* a marked impairment in maintaining attention and concentration (AR 377). Plaintiff contends the ALJ's restriction to simple tasks did not sufficiently address the memory and concentration deficits identified in Dr. Borrowman's opinion. ECF No. 11 at 19.

The court disagrees. Dr. Bowerman ultimately concluded in the "summary" section of her report that any impairment in plaintiff's memory would not impact her ability to carry out simple tasks and would result in no more than mild limitations in her ability to carry out complex tasks. AR 382. The ALJ reasonably translated Dr. Bowerman's report and conclusions into an RFC that included a limitation to simple, routine tasks. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) ("The ALJ translated [claimant's] condition, including the pace and mental limitations, into the

12

only concrete restrictions available to him—[a doctor's] recommended restriction to 'simple tasks.'").

Plaintiff also contends that Dr. Bowerman's social limitations, including an assessment of "periods of marked emotional or behavioral dysfunction," were not properly accounted for. ECF No. 11 at 19-20. Dr. Bowerman's social limitations were adequately accounted for because the ALJ gave adequate reasons for rejecting them in his opinion, finding them overly vague. AR 432, See Ford v. Saul, 950 F.3d 1141, 1153 (9th Cir. 2020) (upholding ALJ's conclusion that doctor's descriptions of claimant's ability to perform in a workplace as "limited" or "fair" were too vague to be vocationally useful). Plaintiff does not challenge the ALJ's finding that this limitation was vague. Moreover, the ALJ amply accounted for plaintiff's social limitations by restricting her to no public interaction and only superficial interaction with coworkers and supervisors. AR 426.

Finally, plaintiff argues that the ALJ omitted adaptation restrictions in the RFC, even though Dr. Bowerman assessed difficulties with adaptive functioning in light of plaintiff's failure to meet developmental and sociocultural standards for personal independence and social responsibility, as well as plaintiff's poor insight and judgment. AR 425, 377. The court reviewed Dr. Bowerman's assessment and agrees with the Commissioner that Dr. Bowerman did not set out concrete adaptive limitations or indicate the extent of plaintiff's adaptive difficulties and accordingly, the ALJ's conclusions are not plainly inconsistent with Dr. Borrowman's assessment. AR 377. The ALJ reasonably found that plaintiff had only a mild limitation in adapting or managing herself, based on a history of mental status examinations that generally showed plaintiff was cooperative and polite, with normal thought process and content, and fair judgment. AR 425-26. The court finds no error.

B. The ALJ Properly Discounted Plaintiff's Subjective Testimony

Plaintiff contends that the ALJ erred by failing to credit her subjective testimony. ECF No. 11 at 20. Plaintiff testified that since 2019, she has been moving from place to place and was not able to keep up with her psychiatric health. AR 427. She said that prior to January 2019, she had been clean and sober for two to three years. Id. Plaintiff stated that when she was hospitalized in November 2023, she did not take drugs in an attempt to commit suicide but rather

had threatened suicide in text messages sent to her former romantic partner.  Id.  She testified at that time that she was going through a lot including a recent breakup and was not "all there in my head."  Id.  Plaintiff stated that she has not participated in mental health treatment since being released from the hospital in November 2023 because hospital staff were supposed to help her get into a psychiatric program, but they had never followed through.  Id.  Plaintiff does not dispute the ALJ's summary of her testimony.  ECF No. 11 at 20.

Evaluating the credibility of a plaintiff's subjective testimony is a two-step process.  First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...[plaintiff] need only show that it could reasonably have caused some degree of the symptom."  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  Id.  If there is objective medical evidence of impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).

Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so."  Id. (internal citations omitted).  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996). Work records, physician and third-party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.1997).

Plaintiff acknowledges that the ALJ gave "multiple reasons for discounting Plaintiff's allegations of mental dysfunction" but argues that the reasons are not clear and convincing, or supported by substantial evidence.  ECF No. 11 at 20; AR 428-429.  On the contrary, the ALJ's analysis is quite substantive and more than adequate.  AR 428-31.  First, the ALJ reasonably

14

considered plaintiff's improvement with medication.  AR 428; see Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ reasonably considered claimant's favorable response to treatment when evaluating their subjective complaints); 20 C.F.R. § 416.929(c)(3)(iv)–(v) (stating that the agency will consider medication and other treatment a claimant received when evaluating their subjective complaints).  The record supports the ALJ's conclusion that plaintiff's symptoms were well managed with medication.  See, e.g., AR 328, 346, 399, 603.

The ALJ also justified his decision to discount plaintiff's testimony by referencing a record of inconsistent and minimal treatment with substantial gaps.  AR 428-31.  An ALJ can discount a claimant's disability allegations "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints[.]"  SSR 16-3p, 2017 WL 5180304, at *9; Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").  The ALJ properly noted significant treatment gaps and a history of minimal treatment in the record.  AR 428.

Finally, the ALJ permissibly relied on plaintiff's reported activities of daily living, which are discussed above and which the ALJ reasonably found inconsistent with a finding of disability.  AR 428.  The Ninth Circuit held that a plaintiff's activities may be used to support an adverse credibility determination where the ALJ finds the activities contradict the severity of the symptoms reported.  See, e.g., Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008).  The Ninth Circuit determined a claimant's level of activity can form the basis for an ALJ to discount subjective statements where: (1) the activities contradict a claimant's testimony or (2) the level of activity "meet[s] the threshold for transferable work skills."  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ identified inconsistencies between plaintiff's testimony and her reported activities.  For example, the ALJ noted that despite her claims of disabling social limitations, plaintiff reported living with a friend, helping friends with housework for pay, talking on the

15

phone, going out to eat with friends, and taking care of a friend's two small children for pay. AR 428. The ALJ gave an adequate rationale for discounting plaintiff's subjective statements and did not err in discounting her subjective testimony.

C. The ALJ Properly Addressed Lay Witness Testimony

Plaintiff argues that the ALJ erred in discrediting her mother's lay witness testimony. ECF No. 11 at 25-26. Prior to rule changes adopted in 2017, ALJs were required to provide germane reasons for discounting lay witness testimony. Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 (9th Cir. 2010). However, for claims filed on or after March 17, 2017, such as this one, revised SSA regulations provide that an ALJ is "not required to articulate how he considered evidence from nonmedical sources...." 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The exact parameters of this new rule are still evolving. In March of 2025, the Ninth Circuit issued an order holding that under the new regulations, "ALJs need not explain their reasons for discounting evidence from nonmedical sources, such as the claimant's friends and family." Hudnall v. Dudek, No. 23-3727, 2025 WL 729701, at *3 (9th Cir. Mar. 7, 2025). However, that decision was later vacated and replaced with a non-binding memorandum disposition. See Hudnall v. Dudek, No. 23-3727, 2025 WL 1379101, at *1 (9th Cir. May 13, 2025). In the revised memorandum disposition, the Ninth Circuit held it need not decide whether the revised regulations change the requirement for germane reasons to discount lay testimony "because any error by the ALJ in not giving a germane reason for rejecting [the lay witness's testimony] was harmless." Id. at *2.

Here, the court need not reach the parameters of the new regulation because, as in Hudnall, any error in articulating the level of reliance on plaintiff's mother's lay witness testimony is harmless. Rita Marinoble completed two third-party function reports, one in June of 2019 and one in July of 2019, asserting that plaintiff had cognitive challenges and behavior challenges. AR 228-235, 258-265. The ALJ considered the statements and reviewed their contents, specifically noting that the statements were compared in relation to "how consistent those observations are with the claimant's statements about their symptoms as well as with all the objective medical evidence in the file." AR 436.

16

The ALJ did not expressly reject or accept the statements; though to the extent there is any error in this, the error is harmless because the lay witness statements provided by plaintiff's mother are substantially similar to plaintiff's own testimony.  AR 229-34, 247-53, 258-63. "Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." Caleb H. v. Saul, No. 4:20-CV-5006-EFS, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020). "Because the ALJ provided clear and convincing reasons for discounting "laintiff's subjective symptom testimony, those same reasons constitute germane grounds for discounting the statements of the lay witnesses." Bruce v. Comm'r of Soc. Sec. Admin., No. CV-25-00957-PHX-MTL, 2026 WL 194211, at *5 (D. Ariz. Jan. 26, 2026).  There is no reversible error here.

### D.  The ALJ Formulated an Appropriate RFC

Last, plaintiff contends that the RFC assigned by the ALJ is impermissibly vague because it fails to provide defined terms with regard to plaintiff's ability to maintain pace.  ECF No. 11 a 27.  The court disagrees.  The RFC restricts plaintiff to work involving simple, repetitive, and routine tasks involving no teamwork, quotas, or pace.  AR 426.  Plaintiff argues that the ALJ should have qualified the degree of her pace restriction because the ALJ found that she had a moderate limitation in concentrating, persisting, or maintaining pace.  ECF Bi, 11 at 27; AR 425. However, the Ninth Circuit Court of Appeals has held that a limitation to simple tasks can account for moderate limitations in pace.  See Stubbs-Danielson, 539 F.3d at 1174 ("The ALJ translated Stubbs-Danielson's condition, including the ['moderate'] pace and mental limitations, into the only concrete restrictions available to him—[non-examining psychologist] Dr. Eather's recommended restriction to 'simple tasks.'").  Accordingly, the undersigned concludes that the ALJ adequately accounted for and described plaintiff's pace limitations in the RFC.

### VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 11) is DENIED;

////

17

2. The Commissioner's cross-motion for summary judgment (ECF No. 12), is GRANTED; and

3. The Clerk of the Court shall enter judgment for the Commissioner and close this case.

SO ORDERED.

DATED: February 18, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

18